Good morning, Madam Chief Judge, and may it please the Court, may I reserve three minutes for rebuttal? You certainly may. This was a short, simple, felon in possession case based almost entirely upon the testimony of the Massachusetts State Trooper who stopped and then searched the rental car the defendant was driving. However, this simple case was permeated with serious constitutional errors, including the legally erroneous denial of a motion to suppress the fruits of the car stop, the preclusion of all cross-examination respecting the bias, namely the racial animus, of the trooper towards African-Americans, the exclusion of highly exculpatory third-party culprit evidence, and grossly improper prosecutorial misconduct in closing argument. Taken either cumulatively or individually, these serious constitutional errors require relief. Let me start with the motion to suppress. Prior to trial, defense counsel filed a motion to suppress based on an argument that the stop was pretextual. That is, that it was based on racial profiling, racial animus based on the fact that the defendant was African-American as opposed to the legal standard of reasonable suspicion. Counselor, before you finish up on that thought, what standard of review applies? I'm sorry, Your Honor? In your opinion, what standard of review applies here? The standard of review is... Hang on a second. It's my understanding that once the motion to suppress was denied, it was not brought up again at trial. Well, that's not true, Your Honor. At sidebar, defense counsel specifically indicated that she was, I don't think she had to, but that she was renewing her motion. I think it is absolutely clear that the standard of review is de novo. This is constitutional error. It is preserved constitutional error. The government asked the trial judge to deny the motion based on an argument that the defendant lacked standing because he was not an authorized driver of the rental car under the contract, and his license was suspended. It has been clear since this court decided, Kimball, in 1994, that all of the occupants of a vehicle that is stopped, that the stoppage of that car is a seizure as to all the occupants. It implicates all of their Fourth Amendment rights to be free from seizure. That holding was restated by this case, by this court, numerous times. In 2007, the Supreme Court, furthering Dellerer v. Prowse, an old case, said in Brenlin that that, in fact, is a case that a passenger has standing. So the government inviting the judge to deny the motion to suppress based on lack of standing was completely off base, and unfortunately the trial judge accepted that invitation and denied the motion based on lack of standing. Never reached the merits. Yes, Your Honor. It seems reading the record that the judge seemed to think that the motion was directed towards the search itself as opposed to the stop. Your Honor, there is no way reading... Well, let me ask you my question, then you can take a guess at what it is. I apologize. What specific language would you point us to in the record that shows that the defendant alerted the judge to the fact that the defendant was challenging the stop itself? In her motion papers, in her memo, which are in the first appendix to the record, she says over and over again, the stop was illegal, the stop was pretextual, the stop was a violation of the defendant's Fourth Amendment rights. She was not attacking the search. She was attacking the stop. That's what the motion to suppress was about. Was Brenlin cited? Brenlin was not cited, Your Honor. It was not cited by her. It was not mentioned by anybody. Was Kimball cited? I'm sorry, Your Honor? Was Kimball cited? No, it was not, Your Honor. Why did the defense then raise the question of standing? The defense did not raise the question of standing. The government said over and over again to the judge, Judge, if you find a lack of standing... Yes, but the government says that you first raised the question of standing. Is that incorrect? I think that is completely incorrect, Your Honor. From day one of the motion to suppress hearing and in its papers opposing the motion, the government said over and over again, Judge, there's no standing here. We don't have to reach the merits. This defendant cannot move to suppress the fruits of the search. That was the government's position. The defendant had no reason to raise standing. The defendant said it's a violation of my rights. I have a right to proceed. The government argued standing, and the judge accepted that invitation. And the government was wrong. The judge was wrong. The merits were never reached. And it's exactly like this court's decision in Vasquez, a decision that I think two members of this panel sat on, where the judge applied the legally erroneous standard, never reached the merits, and this court said there has to be a remand. And the government's argument here that the standard of review here is plain error is frivolous. If you look at this entire motion, it was litigated on the legality of the stop. That was the argument. The argument was that the trooper was racially profiling, that he disproportionately stops African Americans, and that the stop was unconstitutional. That was the argument. It's impossible to look at the record and view it any other way. There's a second argument of waiver that goes something like this. Yes, you continue to preserve the discriminatory enforcement of the law argument, but you signal to the judge that you were giving up the argument that the trooper was in error when the trooper said the vehicle, in fact, had crossed the white line a number of times, and that was the reason. It's unclear, but you know the passage. Your Honor, once again, they take this one passage out of context in which defense counsel stresses that this is not a garden variety motion to suppress. It's relying on racial animus and pretext. I mean, frankly, the government is desperately trying to avoid this court from reaching this claim, and if this court wants to find a way to affirm by pretending that what happened at trial didn't happen, the court will do it. But to be fair, this is a clear case of constitutional error. Mr. Sautin, I would hope you thought better of us than that. I do think better of you, Your Honor. All right. Now then, would you answer the next question? Yes, Your Honor. If you gave up the argument that you object to the trooper's statement about why he pulled over the car in terms of traffic violations, if the trooper were, under normal rules, justified, doesn't the Wren case include us? Yes, Your Honor. I agree. If, in fact, because it's an objective standard, and if, in fact, the trooper was telling the truth when he said the car was weaving all over the road and stopped the car for that reason, I agree. The defendant loses. But there's no basis on this record where the judge never reached the merits, never made a credibility determination about the trooper to make that finding. And certainly on a cold record, this court cannot possibly make that finding. So what you would like is a remand? On that issue, Your Honor. On which issue? On the first issue, which is the denial of the motion to suppress. May I turn to my other issues? Would that include both points? The waving? It would include the argument that the stop was not based on reasonable suspicion. It was based on racial profiling, and the reasons given were pretextual, and they were not credible. And that was the ground for motion to suppress.  Now you move on. Thank you, Your Honor. Okay. With respect to the exclusion of the cross-examination for bias. Notwithstanding the ruling on motion to suppress, trial counsel wanted to cross-examine the trooper on the issue of racial animus. This is a one-witness case. His credibility was key to the case. And the trial judge excluded that cross-examination on the issue of profiling entirely. The defendant is entitled under the Sixth Amendment to impeach for bias. Bias is always relevant. And, yes, the trial judge has a lot of leeway in how much to regulate cross-examination, but that leeway is limited by constitutional parameters. And the complete preclusion of cross-examination of bias, and we're talking about racial bias, is a prototypical kind of bias. And to prevent the defendant from doing that, disabled him from attacking the credibility of the government's key witness in the case. Mr. Sultan, I see why the issue of bias on whether there was a swerving of the car is central. That's a classic bias case. There's one person saying it swerved, you want to establish it didn't swerve. But when we move past that, if we did, what was there about the officer's testimony that was actually at issue? In other words, he said here was a bag, the bag was in the car, I removed it. Was there any basis for challenging the facts that he related to? Yes, what was at issue, Your Honor, is whether the officer is a liar, that he's lying about what he did to justify what he did, because he did what he did because he wanted, he stopped the defendant because he was black, and he was making up a story to cover up his illegal stop. That's bias. Let me put it like this, if your client was driving a blue car, and the officer's only testimony at trial was it was a blue car, then do we really care on that issue about what his bias or state of mind was? It's not really an issue. Right, if he was convicted of driving a blue car, then it would be an issue. Here his testimony was that he found a bag, plastic bag, near the defendant, and inside the bag was a gun, ammunition, and the defendant's prescription drugs. That was at issue. And was there any evidence at all in the record that any of that was not the case? Your Honor, he was the witness. Okay, so if the jury believes him beyond a reasonable doubt, they convict. If they don't, they acquit. That was the case. It was a one-witness case based on credibility. The reason it was only based on credibility is because the trial judge also precluded the third-party corporate evidence that a woman named Tanisha Rodriguez, who had been using the car for the past two months, had actually packed the bag, put the gun and the ammunition in the plastic bag without the defendant's knowledge, and the trial judge wouldn't allow the defendant to put in any evidence on that third-party culprit theory either. So both of the defenses were precluded. What I just heard was no. Your Honor, that's right. There's no affirmative evidence. It's not the defendant's burden to put on affirmative evidence. I didn't ask if it was the defendant's burden. I asked a very simple question. I hear it's no. That's correct. There was no other evidence other than the testimony. May I ask, was the bag in the back seat or on the passenger seat close to the driver? Whatever the officer said. If you believe what he said, which is it was on the passenger seat right next to the defendant, that obviously implicates the defendant. If he's not to be believed, then the jury has a reasonable doubt and acquits. Thank you, Your Honor. Your Honors, may it please the Court, Randall Crum on behalf of the government. Just to address one small point, and this was the question raised about how the issue was framed below with respect to the suppression issue, and particularly how it was framed in the moving papers. And this is where the basis for the government's argument that the issue was framed arguably, probably, quite probably, incorrectly from the start, but it did begin in the defense case. And this is page 46 of the record. There is a section on standing, although the defendant didn't have to include one. The defendant did. And it says, because the defendant, Starks, has an expectation of privacy in the car, he has standing to challenge the stop and search of the car. While the defendant is not the owner, he borrowed the car from the renter. The government has an independent obligation to adhere to the law and to be honest with the court. And here, the government seems to have been very busy leading the court astray. Why shouldn't we look at this as an issue of the government, which ought to have understood what was going on, is the one which induced error into this record? I would not disagree that the government could have done better in clarifying. It had an obligation independent of the defendant to present the correct law and would have served the court far better by clarifying rather than reiterating a mistaken view as to the grounds for standing in the case. It didn't merely reiterate. It kept telling the judge, don't reach these other issues. The case ends when you resolve the standing question. The difficulty, and again, I agree that had the issue been apparent to either, to the government's counsel, it should have been presented to the court. The difficulty was that all the evidence was being presented on the other's theory of standing. The witnesses that were called spoke to the issue of whether there was an ownership interest, whether he had been a properly delegated driver. In responding to that, the government responded to the information presented to the court. What about the bias evidence? How did that go to the search? The bias evidence was related to the – that was presented as a separate issue, Your Honor. Again, this is where you read the argument. It was brought up pre-trial. Yes. In its own irrelevance, pre-trial went to the stop. Well, I would beg to differ in one respect. It appears as though the defendant was making an argument under the Equal Protection Clause. And, again, we know this transitional language where the defendant is making the change from making the argument about ownership interest in the vehicle and then going to the argument about pretext. They said this is not a Fourth Amendment issue and then goes on to argue under Equal Protection and makes an argument for standing under Article III standing, the typical standing applied to not Fourth Amendment standing, which is really not standing but reasonable expectation of privacy. So I think the problem was is the defense counsel did not properly identify the grounds for the stop. It was making an argument that, in fact, was incompatible with Wren. It was not really an available argument, and that was part of the problem. That's, you know, added to the confusion. Again, the government certainly should have clarified it, and there's at least one time where the government says you have no standing to the stop or the search, and that's an incorrect statement of law if the government would agree. So why doesn't that end it? In other words, they come in with evidence that they're touting as important evidence. They've actually incurred a lot of expense to get this evidence, and it only relates to one issue, the stop, and the government affirmatively tells the judge that they have no standing to raise the challenge, either the stop or the search. Doesn't that end our inquiry? It ends it only, again, without consideration of the standard of review, and as we point out, the problem here is that we, in our view, it very clearly is a plain error case because there was no point at which it was crystallized for the district court that there were two possible grounds of standing, you know, two different issues with different types of standing applicable. Had that issue been squarely presented, the judge may well have said, okay, well, if that, you know, tell me more about those two different theories, the standing for the stop versus the search, and reached a different conclusion. That wasn't presented. One gets the impression that the trial judge relied heavily on the government and the government's position. So if we were to conclude that there was error, then your brother says we should remand for findings. What is the government's position on what an appropriate remedy would be? I think, actually, we are in agreement that if the government, again, the government's view is plain error review, but if the government, the court finds that that has been met here, then a remand limited to that issue is appropriate under this court's decision and right. On what issue? Well, I think our view, and we note in our brief, is that it would be left to the district court to decide in the first instance how far to go. It's, again, in fairness to the defendant, there was evidence that they mentioned they were intending to bring in that they did not get to because it was cut off at the issue of standing and the merits were not met. So one presumes that the district court, to whom it's remanded, would consider what additional issues might be raised once you go beyond standing to the merits. And so we would not prejudge. Well, all right. Suppose on remand the trial judge concludes that the officer had a valid basis to stop the car, independently of the question of discriminatory motive, and that valid basis had to do with the car crossing over the white line. Then what happens? Well, in our view, this is a case where the appropriate course, if it was remanded, was this court would retain jurisdiction to deal with an appeal of those findings, should the defendant challenge them, and the remaining issues in the case, which would then remain relevant. Well, what would the district judge have to do at that point? Well, presumably they would issue findings and denial of the motion to suppress and findings related to the credibility of the officer and anything else that we are requesting. And in the government's view, would that then preclude consideration of a discriminatory motive? Well, I think the difficulty is ran, which is that stops may be pretextual as long as the facts underlying or establish the probable cause necessary to support the stop. The analysis from the Fourth Amendment perspective is at an end, and there's not an exclusionary rule under the Equal Protection Clause in federal law. So then it would move on to the other issues as they have been framed here. What other issues? Well, the evidentiary and the closing argument and the bias issues that have been raised. What about the confrontation restrictions, the judge's exclusion of cross-examination based upon bias, racial bias? This is another area where I think that the issue is not well-preserved or well-crystallized for the district court. As we explain in our record, what happened is there was extensive litigation over an expert who was presenting one different extrinsic evidence on racial bias. The expert was excluded. Then at trial, the defense counsel appeared to have simply assumed that that meant that no questions could be asked on the subject and then did not make a separate argument that notwithstanding the exclusion of my expert, I'm entitled to ask these questions. My recollection from the record is that defense counsel checked in with the court to find out if she would be permitted to examine on racial bias, and the court confirmed that that was not going to be allowed. Your Honor is correct. If I misstated how that happened, the defense counsel said, I assume I may not. The court said, you're right. You can't. So the court didn't allow it. Did not allow it. But again, it was not presented. The exclusion of the expert had been argued purely under evidentiary rules, whether it was cumulative, was it relevant expert testimony. It was not argued on the confrontation clause grounds. The constitutional argument was not presented as a ground for the admission of the expert testimony. And obviously, there's a difference between expert testimony, which may be excluded, extrinsic evidence of bias may be excluded, and the cross-examination, which is not supposed to be entirely eliminated. But that distinction was never brought to the court's attention. The defense counsel appeared to assume that the decision on one controlled the decision on the other. The court affirmed that without ever hearing an argument that I have an independent confrontation clause right to ask a few questions, independent from the report, independent from the expert. That's why we're arguing that this issue is on plain error review as well. And on that basis, arguing that while the better course would have been to allow a question or two, as the courts typically would on, you know, I've never been challenged as being biased. You know, one or two questions may have been asked. On plain error review, there's just simply not a showing on this record of a different result, had those questions been allowed. So that's where our argument focuses, because we agree that, in general, the better course would be to allow questions unbiased. That's the law. Mr. Crum, I truly don't understand the answers here. You seem to suggest that if we find error on the standing issue, that we remand, and then the case come back to us, and then we address all of the other issues. Is that the government's position? Well, we merely assume that the court may think in the interest of efficiency where the decision is not a foregone conclusion. Would it be more efficient to resolve the other matters, including a remand? The court could certainly decide all the issues presented. But, no, I think our concern was that the court might be concerned that if it went the other way, the other issues would be mooted, and the opinion would become advisory. So the government doesn't have a fixed view of this, but simply assumes that since a remand on that issue is possible, that might be the choice in case that might terminate the case without a need to reach the other issues. Mr. Crum, what happens if we were to remand the case on the first issue, the stop issue, and the court holds a hearing and it decides to hear the expert testimony and concludes it's persuasive but finds under Wren that there was a swerving, so it doesn't need to get to it? What does that do for the issue at trial as to excluding the expert testimony? Well, my assumption would be that the standard rules of law of the case apply, and remand the mandate rule, that any issue made newly relevant by the proceedings on remand would be raised in the subsequent proceedings. So that may be another reason for waiting on the other issues, because to the extent that they changed anything in terms of the record, there could be an arguable impact on others. I thought you just told us that you thought apart from the Wren issue that you didn't think discriminatory intent had anything to do with the facts in the case. That's where we started when you stood up. With respect to the suppression issue, since I started there, I understood your honor to be starting there. Obviously the question of bias was properly raised here, and the question of bias as relating to the officer's credibility. What's the government's position on the question of bias if it doesn't go to the stop? You mean with respect to the trial evidence? Yes. Well, as I've conceded, I think it would be appropriate in the circumstance to have allowed cross-examination of the officer with respect to bias as it went to his credibility. But I don't understand beyond that that it's relevant would be that if he's biased, he may not be believable when he says the bag was found in the front seat rather than the back seat or anywhere else, as my brother has explained. I think that is the argument. Those facts did rely on the credibility of the officer's testimony, and that's why it would come in or be relevant. So I'm still having trouble. Take the exclusion of the expert testimony at trial. If we affirm that and then remand for the first issue, then that exclusion goes back subject to the mandate rule. But if we simply remand on the first issue and don't get to any of the other issues, then the exclusion of the expert testimony remains subject to the discretionary district court law, the case doctrine. So there's a difference, isn't there? There is a difference. And, again, I think, Barb, we don't have a position in the court's decision discretion which issues to reach and whether it makes sense to allow the remand first or to decide the other issues subject to the possibility of revision. I thought the government's position was that once you set aside the search, any error as to questioning as to discriminatory intent was harmless. That is our argument, yes. All right, you're making inconsistent arguments, but that's all right. Well, again, on that point, I think it simply depends on what the district court finds. Our view is that on the existing record, there isn't anything that remains after the suppression issue is decided. But in light of Judge Coyote's point, if the record were expanded, that certainly could change. So I can't speak to what the record might look like after remand. And if there's any consistency, I think that's what it is. I'm speaking to the existing record. I don't think there's anything here that renders any of the errors in the admission of evidence not harmless. But I agree that the record could change, and we're not taking a position that the district court could not or should not allow additional testimony on remand. All right. Are there any questions with respect to any of the other issues presented here? On the closing arguments, why isn't ‑‑ I'm puzzled that your office just doesn't have a clear rule that it's easy for all the prosecutors to have, that you don't put your toes on that line, don't go near making such arguments. Are there particular ones that you're ‑‑ I mean, there are several different challenges to the closing argument here, and some of which we do acknowledge could have been better phrased or said ‑‑ That's what I have in mind. I think that the two in my mind that ran at risk of going further than they should have was the first with respect to the question of commenting on the stop, legality of the stop. It was actually the subject of a discussion prior to the ‑‑ and this is worth noting because I don't think it really appears in the arguments. It was the subject of discussion between the parties in the court, and the court said that they would allow the government to speak to it. The government arguably went further than the agreement in saying that this is a done deal, it's settled, the court decided, rather than simply saying you don't need to reach this issue. Again, that was objected to afterwards, but then a cautionary instruction was declined, and nothing ‑‑ the defendant declined to do anything about that error at the time. Again, I think that ran the risk of crossing over into bolstering. On the other hand, may I finish just in response? I don't think it went so far as to ‑‑ because it really wasn't speaking of the officer's credibility, it wasn't saying the officer found him credible, the officer believed him, but simply that that stop was legal for whatever reason, potentially totally divorced from anything the officer said or did. So again, under a plain error view, we would argue that that was a harmless error. There aren't any other questions? Thank you. Mr. Sultan. Thank you, Your Honor. With respect to the preservation of the bias issue at trial, as Judge Thompson noted, defense counsel did go to sidebar and specifically indicated to the judge she wanted to question him about issues related to racial profiling, and she asked whether the court's prior ruling about not letting the expert testify precluded her from doing so, and the judge says, yes, it does. You can't do it. She then marks for identification a chart showing his disproportionate stopping of African Americans for identification. So, I mean, she did everything she could do to preserve that issue at trial. With respect to closing argument, the one which I just find most egregious is where in discussing the officer, his credibility, the prosecutor says at the beginning of his initial closing argument, this is not in response to the defense closing, he says the issue of the legality of the stop has been settled. The stop was legal. The arrest was legal. The search was legal. That's a done deal. That's been decided by the judge. That's objected to at trial. That is extraordinary. Number one, that is not what the judge ruled. The judge simply said on a standing basis, I'm going to deny the motion. The judge never said it's a legal stop, it's a legal arrest, it's a legal search. Secondly, even if the judge had ruled that way, which he hadn't, none of that was before the jury. The prosecutor had absolutely no right to say that to the jury, which essentially put not just the imprimatur of the government, but more significantly the imprimatur of the district judge on the officer's conduct in a one witness case in which his credibility was basically the whole case. Now, I've read a legion of decisions from this court either excusing prosecutorial misstatements in closing or finding them harmless. Frankly, this one just goes over the line. This is not a case of overwhelming evidence. This is a one witness case. It went directly to his credibility. It was objected to at trial. And frankly, I don't think this court should have to reach these complicated issues about remand and mandate because without even remanding on the suppression issue, there is more than enough grounds on the other constitutional errors we've identified for this court to reverse and vacate the conviction. And I just want to say one more thing about a remand. Just to clarify what I said earlier, now I've had a chance to think about it. I still agree, Chief Judge Lynch, that under Wren I think we're hard pressed to make a Fourth Amendment argument. But the defendant did make an equal protection argument on racial profiling as well. And as far as I know, this court has not yet spoken on whether or not suppression can be a remedy for an equal protection violation. So I think I misspoke when I said that's the end of the suppression motion if the court on a remand found that the car was swerving. I think that based on racial profiling and pretext, there's still an equal protection claim which could justify suppression. I thank the court. No, I'm sorry. Please, the equal protection defense, right, it's not a claim. Your client is a defendant in a criminal proceeding. The question is whether the equal protection clause gives him a type of defense here despite Wren. That's correct, Your Honor. Okay. Now that we've articulated it, why would we get into that issue? You have the other argument that regardless bias is relevant to the credibility of his testimony. I don't think the court has to reach it. I think I overstated my concession. I just wanted to clarify it. Thank you, Your Honors. Thank you.